**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**DANNY COLON,**

                                        **Plaintiff,**

        **vs.**                                    **09-CV-1006 (MAD)**

**D. PORLIAR; A. COLVIN; G. WARNER;**
**F. DELUKE; S. BAXTER; K. COPELAND;**
**J. KITCHNER; C. BURDEN; N.P.T NASMITH;**
**DR. THOMPSON; MICHAEL MCCARTIN.**

                            **Defendants.**
─────────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Danny Colon
96-A-2756
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
*Plaintiff Pro Se*

ERIC T. SCHNEIDERMAN                 Christopher W. Hall, Esq.
Attorney General for the State of New York
The Capitol
Albany, New York 12224
*Attorney for Defendants*
*D. Porliar, A. Colvin, G.. Warner, F. Deluke, S. Baxter,*
*K. Copeland, J. Kitchner, N.P.T. Nasmith*
*and Dr. Thompson*

WILSON, ELSER, MOSKOWITZ,            F. Douglas Novotny, Esq.
EDELMAN & DICKER, LLP
677 Broadway
Albany, New York 12207
*Attorneys for Defendant*
*C. Burda*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff claims that defendants violated his Eighth Amendment rights when they subjected him to excessive force on three occasions (March 7, 2007, March 14, 2007 and April 26, 2007) and denied him adequate medical care.  Defendants move for summary judgment and dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 56. (Dkt. No. 37, 41).  Plaintiff has opposed the motions. (Dkt. No. 43).

### BACKGROUND

The facts in this case, unless otherwise noted, are undisputed.[1]  At the time of the alleged events, plaintiff was in the custody of the New York State Department of Correctional Services ("DOCS").  Plaintiff resided at Great Meadow Correctional Facility ("Great Meadow") from March 2007 until June 2007.  Defendant Christa Burda[2] ("Burda") is a Registered Nurse employed by Nursefinders, Inc. and assigned to Great Meadow.  Defendant Ted Nesmith[3]

---

[1] The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) Defendants' Statements of Material Facts; (4) Plaintiff's response to Defendants' Statements of Material Facts; (5) the exhibits and evidence submitted by Defendants in support of their Motion for Summary Judgment; (6) plaintiff's deposition transcript; and (7) the exhibits and evidence submitted by Plaintiff in Opposition to Defendants' Motion for Summary Judgment.

In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1. Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. *Jamison v. Metz*, 2011 WL 4345297, at *13 , n.6 (N.D.N.Y. 2011) (citing N.D.N.Y. L.R. 7.1(a)(3)). Here, plaintiff responded to defendants' statements with both admissions and denials.  However, where an issue was contested, plaintiff failed to provide specific citations to the record. Therefore, to the extent that defendants' statements are supported by the record, the Court will deem defendants' facts admitted by plaintiff.  *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

[2] Defendant's name is misspelled in the caption.

[3] Defendant's name is misspelled in the caption.

("Nesmith") is a Physicians' Assistant employed by DOCS at Great Meadow.  Defendants

Porliar, Colvin, Warner, Deluke, Baxter and Kitchner are correctional officers employed at by

DOCS at Great Meadow.[4]

On March 5, 2007, plaintiff was seen for the first time by Great Meadow medical staff.[5]

The Ambulatory Health Record indicates that plaintiff had a history of low back pain for which

he was prescribed Flexeril but no acute medical problems.[6]  There is no entry in plaintiff's

Ambulatory Health records for March 7, 2007.  On March 11, 2007, plaintiff was seen again by

the medical staff at Great Meadow.  The entry indicates "36 y/o new @ GMCF" and notes that he

had a bullet in his right leg, "B/P occ elevated" and "s/p backache - Flexeril - scoliosis".

On April 26, 2007, plaintiff was the subject of a use of force incident at Great Meadow.[7]

On April 26, 2007 at approximately 5:15 p.m., Nurse Burda examined plaintiff.  Plaintiff

complained of pain in his right ankle and difficulty walking.  Nurse Burda found that plaintiff had

redness on his right shoulder blade, a four inch laceration on his right bicep, a laceration on the

---

[4] All claims against defendant Michael McCartin were dismissed by Order of this Court on September 29, 2011. (Dkt. No. 4). There is no information in the record regarding Dr. Thompson's position or job duties.

[5] In support of the motion, defendants provide an affidavit from Nesmith with plaintiff's Ambulatory Health Records attached.  Nesmith avers that the records were kept in the ordinary course of business by DOCS employees and that he has reviewed the records which he attests are true and accurate copies. Nesmith did not prepare all of the medical records contained therein.  However, plaintiff does not object to the admissibility of the Ambulatory Health records.

[6] Flexeril is a skeletal muscle relaxant for relief of muscle spasms. *Dorland's Illustrated Medical Dictionary*, 465, 725 (31st ed. 2007).

[7] The Use of Force Report for April 26, 2007 is annexed to defendants' motion papers.  Part B of the report is entitled "Physical Examination/Treatment Report".  That portion was prepared by C. Burda and has been properly authenticated through an affidavit.  The remaining portion of the report is not in admissible form.

left side of the upper lip with edema, edema in the left eye which was half open, and sclera in the left eye being red.[8]

Nurse Burda consulted with P.A. Nesmith who ordered plaintiff admitted to the infirmary. On April 26, 2007, plaintiff was admitted to the Great Meadow infirmary and treated with Tylenol. On April 27, 2007, a number of x-rays were taken of plaintiff's body: the left ribs, left shoulder, eye sockets, right hand and right ankle. The x-ray report revealed a negative finding, meaning no fractures, dislocations, or subluxations were present. The x-rays also revealed that plaintiff's lungs and paranasal sinuses were clear. "Metallic fragments" were also found in the soft tissue around the distal tibia in the right ankle. Otherwise, the surrounding soft tissue was found "unremarkable". While in the infirmary, plaintiff complained of rib pain. Plaintiff was given Tylenol and an abdominal binder to help decrease the pain. On April 30, 2007, plaintiff had "no c/o".

On May 1, 2007, plaintiff was discharged from the infirmary with a note in his records that he was to see Dr. Thompson in one week. Following his discharge on May 1, 2007 until June 7, 2007, plaintiff was treated nine times by prison medical staff at Great Meadow. On May 2, 2007, plaintiff complained of eye and back pain and was given Ibuprofen. On May 4, 2007, plaintiff requested medication for pain in his right arm and was given antibiotic ointment. On May 7, 2007, plaintiff complained of tender left ribs and right hand pain and was prescribed Percocet.[9] On May 8, 2007, plaintiff complained of "needing a sick call". P.A. Nesmith saw plaintiff during the morning sick call rounds and found plaintiff in no acute distress.

---

[8] Sclera is the tough white outer coat of the eyeball, covering approximately the posterior five-sixths of its surface, and continuous anteriorly with the cornea and posteriorly with the external sheath of the optic nerve. *Id*. at 1704.

[9] Percocet is an opiod. *Dorland's* at 1429.

On May 14, 2007, plaintiff complained of throwing up blood.  The officers did not observe plaintiff vomit blood but the PA indicated he would see plaintiff the next day and F Block officers were advised to call if there was any change in plaintiff's status.  The next day, plaintiff was given a prescription for eye drops and the notations indicate that his Percocet was discontinued.

On June 6, 2007, plaintiff complained of "crucial pain" in his ribs, breathing problems and stated, "he is now blind in his left eye".  Defendants claim that plaintiff refused an eye evaluation because he wanted to be transferred.  On June 6, 2007, plaintiff signed a Refusal of Medical Examination and/or Treatment refusing treatment for his left eye.  Plaintiff claims that he was forced to sign the document in order to be transferred out of Great Meadow.[10]

On or about June 7, 2007, plaintiff was transferred to Upstate Correctional Facility.

On April 4, 2009, plaintiff commenced the within action.  On April 5, 2011, defendants Porliar, Colvin, Warner, Deluke, Baxter, Copeland, Kitchner, Nasmith and Thompson moved for summary judgment and dismissal of plaintiff's complaint arguing: (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff failed to state a claim for excessive force relating to the March 7 and March 14 incidents; and (3) plaintiff failed to state a claim for medical deliberate indifference. (Dkt. No. 37).  On April 8, 2011, defendant Burda moved for summary judgment arguing that plaintiff failed to state a claim for medical indifference. (Dkt. No. 41).  Plaintiff has opposed the motions.

---

[10] Defendants claim that Dr. Whalen witnessed plaintiff execute the document.  While the document contains Dr. Whalen's signature, it has not been properly authenticated.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 ( c ).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  It is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56( c )(e)).

"Defendants can meet their burden of establishing their entitlement to summary judgment by relying on plaintiff's medical records to establish the absence of any evidence supporting deliberate indifference to his mental health needs." *Guarneri v. Hazzard*, 2010 WL 1064330, at *8 (N.D.N.Y. 2010) (citing *Mills v. Luplow*, 2009 WL 2579195, at *8 (W.D.N.Y. 2009)). "Though conventional wisdom might dictate the submission of affidavits from the primary actors ... [the] defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's claims, is sufficient to cast the burden upon the plaintiff to come forward with evidence

demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims." *Id.*

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts ("Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) (holding that the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement and must be satisfied that the movant's assertions are supported by the evidence in the record).

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (other citations omitted)). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F.Supp.2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v.*

*Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## II.     Exhaustion Requirement

The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). This "requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,'" and regardless of the subject matter of the claim. *See id.* (citation omitted). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See id.* The failure to exhaust is an affirmative defense that defendants must raise and thus, it the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Giano*, 380 F.3d at 675 (citation omitted); *see also Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir.2004) (citation omitted).

"The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Review Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

The Second Circuit has, "fashioned a three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA". *Brownell v. Krom*, 446 F.3d

305, 311–12 (2d Cir. 2006) (citation omitted).  The Court must ask whether: (1) administrative

remedies were not in fact available; (2) prison officials have forfeited, or are estopped from

raising, the affirmative defense of non-exhaustion; or (3) special circumstances justify the

prisoner's failure to comply with administrative procedural requirements. *See Hemphill v. New*

*York*, 380 F.3d 680, 686 (2d Cir.2004).

     The IGP also has an "expedited" process for harassment grievances which pertains to

"[e]mployee conduct meant to annoy, intimidate, or harm an inmate.[11]  *Espinal v. Goord*, 558

---

[11] N.Y. Comp. Codes R. & Regs., Title 7, § 701.8 (2008) provides:

Allegations of employee harassment are of particular concern to the administrators of department facilities. Therefore, the following expedited procedure for the review of grievances alleging harassment shall be followed.
(a) An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.5(a) of this Part.
Note: An inmate who feels that he/she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.

(b) A grievance alleging harassment shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (form #2136). All documents submitted with the allegation must be forwarded to the superintendent by close of business that day.

(c) The superintendent or his/her designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in section 701.2 of this Part. If not, then it shall be returned to the IGRC for normal processing.

(d) If it is determined that the grievance is a bona fide harassment issue, the superintendent shall:

(1) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance;
(2) request an investigation by the inspector general's office; or
(3) if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation.

(e) Once a grievance has been referred to the superintendent and determined to be an allegation of harassment, that grievance cannot be withdrawn. The superintendent must address the grievant's allegations.

(f) Within 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(g) If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC. This is done by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk.

F.3d 119, 125 (2d Cir. 2009) (internal citations and citation omitted).   A harassment grievance is sent directly to the superintendent. *Id*.  If the grievance is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC.  *Id*.

Here, defendants claim that plaintiff failed to exhaust his remedies because no grievances were filed in relation to the allegations in his complaint.  In support, defendants provide affidavits from the Great Meadow Inmate Grievance Supervisor, Scott Woodard, the Upstate Correctional Facility Inmate Grievance Supervisor, Brandi White and Karen R. Bellamy, the Director of the DOCS Inmate Grievance Program.   Woodard and White aver that they searched the grievance records maintained in their offices and found that plaintiff never submitted any grievances at Great Meadow or at Upstate in 2007.  Bellamy searched the records maintained in the CORC database and found no record of any appeals to CORC of grievances filed by plaintiff in 2007.

In opposition, plaintiff claims that he attempted to file "numerous" grievances but that the "corrupt staff" "refused" to accept or file his grievances.  Plaintiff argues that defendants acted in retaliation for plaintiff filing a lawsuit in 2003 against another corrections officer.[12] Plaintiff claims that Bizao and others continually "pointed him out" to other officers.  As a result, plaintiff claims he filed Code 49 complaints with Commissioner Brian Fischer which were investigated by the Commissioner and the Inspector General's Office.  Construing plaintiff's *pro se* complaint liberally, plaintiff alleges that the first *Hemphill* exception applies.  To wit, administrative

(h) If the grievant wishes to appeal the superintendent's response to CORC, he/she must file a notice of decision to appeal (form #2133) with the inmate grievance clerk within seven calendar days of receipt of that response.

(i) Unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in section 701.5 of this Part shall be followed.

[12] A copy of plaintiff's complaint in the matter of *Colon v. Bizao, et. al*. (03-CV-1535) is annexed to defendant Burda's motion papers.

10

remedies were not available to him due to his fear of retaliation. *See Mateo v. Corbine*, 2010 WL3629515 at *4-5 (S.D.N.Y. 2010).

At plaintiff's deposition, defense counsel thoroughly questioned plaintiff regarding his grievances and Code 49 complaints. Plaintiff testified that he "submitted a complaint to the superintendent" but that he does not have a copy of the complaint, which he refers to as a "Code 49" complaint. Plaintiff also claims that, on March 8, 2007, he filed a grievance with the IGRC regarding the March 7, 2007. According to plaintiff, a few days later, a sergeant came to interview him in response to both the grievance and the complaint. Plaintiff could not identify the sergeant by name. Plaintiff testified that he received a response from the grievance committee and a decision from CORC denying his grievance. Plaintiff claims that he lost copies of all documentation when his property was taken from him after he was transferred to the Great Meadow SHU in late April 2007.

As to the April 2007 incident, plaintiff testified that he filed a Code 49 complaint directly to the superintendent. Plaintiff claimed that the incident was investigated and that written decisions were issued. Plaintiff admitted that he did not appeal his complaint to CORC but explained that he was not required to file such an appeal because a Code 49 complaint is filed directly with the superintendent.

During the deposition, plaintiff produced a handwritten Code 49 complaint. The document was marked as Defendants' Exhibit "L" for identification and contains a stamp in the right-hand corner that reads, "Department of Correctional Services received Inspector General June 25, 2007, Resubmitted". Plaintiff testified that the complaint was initially submitted on April 26, 2007 and resubmitted when he failed to receive a response. The plaintiff was asked the following questions and provided the following responses:

Q.      So we've had marked for identification as Defendants' Exhibit
        L your resubmitted complaint to Commissioner Fisher, which
        also went to the Inspector General's Office; correct?

A.      Yes.

Q.      Now, in this complaint you said that the Great Meadow and
        Upstate Correctional Facilities refused to respond to your
        complaint under IGRC standards to appeal issues to CORC; is
        that correct?

A.      That's right.

Q.      What did you mean by that?

A.      Meaning, when I sent a copy of this complaint to IGRC, being
        that they refused to respond, it was submitted to
        superintendent, it was submitted to Mr. Brian Fisher to do a
        thorough investigation.

        Being that IGRC didn't want to respond and I tried to go
        through the remedies of the IGRC submitting a complaint,
        when I know for a fact Code 49 complaint [sic], they're not
        going to respond to that.  What they'll do, when an inmate
        submit [sic] harassment, assault, they disregard it and throw it
        away.

Plaintiff testified that the superintendent issued a decision regarding his Code 49
complaint but that he did not receive the decision because he was transferred to Upstate.

Exhibit "L" to plaintiff's deposition testimony is not part of the record herein as neither
plaintiff nor defendants have supplied the Court with the exhibit.  In defendants' initial motion
submission, defendants did not reference, address or annex copies of plaintiff's Code 49
complaints.  Rather, defendants based their arguments solely upon plaintiff's failure to file
grievances at Great Meadow and Upstate.  Only after plaintiff opposed the motion did defendants
address the Code 49 complaints.  Defendants offer the conclusory assertion, "there is no record of
a Code 49 complaint at either prison since it would have shown up as a grievance and appeal to
CORC".  In support of that statement, defendants cite to the affidavits from Bellamy, Woodward

and White.  However, the Court has thoroughly reviewed all three declarations and finds no such statements by any of the affiants.  The record is devoid of any affidavit or evidence addressing plaintiff's Code 49 complaints, which, based upon the deposition transcript, clearly exist.

Considering the record, as it presently exists, defendants have failed to submit sufficient evidence to persuade this Court to award summary judgment on procedural grounds.  Viewing the evidence in a light most favorable to the *pro se* plaintiff, the Court finds that triable issues of fact exist with respect to whether plaintiff exhausted his remedies.  At trial, a jury could reasonably find that plaintiff exhausted his remedies with the Code 49 complaints and further, a jury could conclude that, "the filing of a grievance would have been redundant, and likely would ultimately have led to the same result, with deference undoubtedly being given to the investigation previously conducted".  *See Franklin v. Oneida Corr. Facility*, 2008 WL 2690243, at *7 (N.D.N.Y. 2008).   If plaintiff's Code 49 complaint prompted an investigation of the alleged incidents, then a question of fact may exist regarding plaintiff's claim that he had been threatened by defendants.  *See Jacoby v. Phelix*, 2010 WL 1839299, at *8-9  (N.D.N.Y. 2010).

Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's complaint based upon plaintiff's failure to exhaust his administrative remedies is DENIED.

## III.   Excessive Force

Defendants argue that there is no record that plaintiff was injured on March 7, 2007 or March 14, 2007, thus, the only conclusion to be drawn from the absence of evidence is that plaintiff was not subjected to excessive force on these dates.[13]

"In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and

---

[13] Defendants do not argue that plaintiff failed to state a claim for excessive force as to the incident on April 26, 2007.

unusual punishments." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).  "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Id.*  The subjective inquiry looks to whether the defendant prison official acted wantonly, which "turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm".  *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010) (citation omitted).  The objective inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *see also Geyer v. Choinski,* 262 F. App'x 318, 319 (2d Cir. 2008) ("To satisfy the objective requirement, the prisoner must demonstrate that 'the alleged violation [was] sufficiently serious by objective standards'").   The court must assess such factors as "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988).  The Second Circuit has consistently held that the extent of the injury is a relevant, but not a determining factor in an excessive force claim. *Abreau*, 368 F. App'x at 193*; Sims v. Artuz*, 103 F. App'x 434, 437 (2d Cir. 2004).  "Even if the injuries suffered 'were not permanent or severe,' a plaintiff may still recover if 'the force used was unreasonable and excessive'". *Corselli*, 842 F.2d at 26 (citation omitted).

Defendants have not provided any affidavits from any of the individuals allegedly involved in the excessive force incidents.  Conversely, plaintiff was deposed and provided details regarding the alleged March 7, 2007 incident and explains that the lack of documentation was due to the fact that he was denied medical treatment after the March 7th incident.  According to

plaintiff, on March 7, 2007, Porliar took him out of the line near the rotunda and threw plaintiff against the wall.  Plaintiff claims that Porliar told him that, "he'd better dismiss my pending lawsuit" against another officer.  Plaintiff claims that Porliar grabbed him around the neck while three or four other officers, "punched and kicked" him.  Plaintiff claims he asked for medical treatment after the incident but that his requests were continually denied.  Plaintiff also asserts that Porliar told him to be quiet and to never speak of the incident.

Without any affidavits from the officers allegedly involved, defendants have failed to produce any competent, admissible evidence establishing that no force or *de minimis* force was used on March 7, 2007.  Defendants motion is erroneously based solely upon plaintiff's lack of medical treatment on March 7th and March 14th.  Defendants argue that the Court should infer, from the lack of medical documentation, that plaintiff's injury was not serious and thus, no excessive force was used.  This Court, consistent with Second Circuit holdings, rejects defendants' arguments.  *See Pierre–Antoine v. City of N.Y.*, 2006 WL 1292076 at *3 (S.D.N.Y. 2006) (declining to dismiss excessive force claim although "the medical evidence [made] it less likely that [plaintiff] can prevail at trial, particularly because it does not reveal any severe injury"); *see also Griffin v. Crippen*, 193 F.3d 91, 92 (2d Cir. 1999) (the seriousness of the plaintiff's injury is not the determining factor). While plaintiff's evidence in support of the March 7th incident is minimal and lacks independent corroboration, at this juncture, his deposition testimony is uncontroverted and is sufficient to establish an issue of material fact and defeat summary judgment.  *See Butler v. Gonzalez*, 2010 WL 3398156, at *8 (S.D.N.Y. 2010) (the Court places little probative value on the absence of a "use of force" incident report); *see also Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003) (the plaintiff's affidavit describing his injuries is a sworn statement and more than mere conclusory allegations and should be treated as

evidence in deciding a motion for summary judgment).  A jury may reject plaintiff's excessive force claims based upon the absence of medical documentation on the date of the alleged incident and no mention of the incident anywhere in subsequent records.  However, that determination involves a credibility analysis that the Court may not carry out on a motion for summary judgment.  "The credibility of [the plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact."  *Scott*, 344 F.3d 282 at 290.

As to the alleged March 14, 2007 incident, during his deposition, plaintiff testified, several times, that his complaint involves two incidents; one on March 7, 2007 and the other on April 26, 2007.  Accordingly, as plaintiff has failed to respond to defendants' arguments regarding the use of force on March 14, 2007 and as the deposition testimony is devoid of any reference of any incident, the Court deems that claim abandoned by plaintiff and dismisses plaintiff's claims of excessive force on March 14, 2007.

The record before this Court contains genuine, triable issues of fact regarding the use of excessive force on March 7, 2007 that must be resolved by a jury.  Thus, defendants' motion for summary judgment and dismissal of plaintiff's excessive force claim relating to the March 7, 2007 incident is denied.  Moreover, as defendants present no argument with respect to plaintiff's claim of excessive force on April 26, 2007, that claim must also be resolved by a jury.

## IV.   Deliberate Indifference to Medical Needs

Defendants argue that plaintiff was not denied medical care following the April 26, 2007 use of force incident.  Moreover, there is nothing to suggest that defendants knew of and disregarded an excessive risk to plaintiff's health.  Plaintiff claims that there is a general dispute with respect to whether plaintiff suffered from serious injuries.  Plaintiff contends that Nurse Burda never examined plaintiff's left ribs during the April 26, 2007 examination.  Plaintiff further

alleges that subsequent scans and films taken at Alice Hyde Medical Center were positive for a fracture and dislocation of plaintiff's left ribs.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to establish a claim for unconstitutional denial of medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Hathaway*, 37 F.3d at 66 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This standard requires proof of both an objective and subjective element.

First, the prisoner must demonstrate that his alleged deprivation was of a "sufficiently serious" nature. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This can be shown by proving "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990). Courts have also considered factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)).

Second, a prisoner must show that "the prison official knew of and disregarded his serious medical needs." *Chance*, 143 F.3d at 702 (2d Cir.1998) (citing *Farmer*, 511 U.S. at 837). It is not enough to merely disagree over the proper course of treatment. *See id.* at 703. Rather, a prisoner must demonstrate that the prison official acted intentionally, for example, by "intentionally

denying or delaying access to medical care or intentionally interfering with ... treatment." *Estelle*, 429 U.S. at 97.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Id.* at 106; *see also Palacio v. Ocasio*,  2006 WL 2372250, at *11 (S.D.N.Y. 2006) (the failure to diagnose a jaw fracture did not support a claim under 42 U.S.C. § 1983).

### A.      Objective Element

Plaintiff alleges that his left ribs were broken in the April 26, 2007 incident.  A broken rib "could present a serious medical need" if treatment was not properly administered.  *Torres v. New York City Dep't of Corrs*., 1995 WL 63159, at *1 (S.D.N.Y. 1995).  Plaintiff claims that the medical records from Alice Hyde Medical Center support his assertion.  During the deposition, plaintiff produced two documents from Alice Hyde Medical Center.  Plaintiff testified that the documents (x-rays, bone scans and CAT scans) revealed a broken left rib.  The documents allegedly are dated October 29, 2007 and November 21, 2007 - six to seven months after the alleged excessive force incident(s).   These documents are not part of the record herein and plaintiff has not provided any evidence or affidavit to support his assertion.  Conversely, defendants provided evidence establishing that x-rays of plaintiff's left ribs taken on April 27, 2007 were negative for fractures.  While plaintiff contests the veracity of these reports, he has not come forth with any competent, admissible evidence to support his assertions.  Plaintiff offers no evidence, other than his own statement, that his left ribs were broken.[14]  Moreover, even assuming plaintiff could establish that he suffered from broken ribs, there is no evidence establishing that

---

[14] While the parties failed to provide the Court with medical records from Alice Hyde Medical Center, the record indicates that such records exist.  Plaintiff produced the x-ray reports from Alice Hyde Medical Center during his deposition.  The records were marked as exhibits during the deposition and plaintiff testified about the documents.

his injury was serious.   Thus, the Court finds that plaintiff cannot establish the objective element of his Eighth Amendment claim.

**B.      Subjective Element**

Even assuming plaintiff established that he suffered from broken ribs and that such an injury was sufficiently "serious", plaintiff has not provided sufficient evidence to raise a genuine issue of material fact regarding whether defendants were deliberately indifferent to plaintiff's serious medical need.  Here, the parties do not dispute that plaintiff requested and received medical treatment on the day of the excessive force incident.  Therefore, the dispute involves the adequacy of said treatment.

Plaintiff was examined on the day of the use of force incident.  Nurse Burda documented plaintiff's complaints and her findings in both the Ambulatory Health Records and in the Use of Force report.  On the same day, plaintiff was admitted to the infirmary.  Therefore, plaintiff cannot establish that defendants delayed or denied medical treatment after the alleged incident.  Plaintiff remained in the infirmary for almost a week and during that time, x-rays were taken of plaintiff's ribs, shoulder, orbits, right hand and right ankle.  Plaintiff was also treated with Tylenol for his rib pain, a left eye pad and an abdominal binder.  After his release from the infirmary, plaintiff received additional medical treatment for his rib pain and other various complaints.  The record establishes that from the time he was released from the infirmary on May 1, 2007 until the time he was transferred to Upstate one month later, plaintiff had approximately nine sick call visits for rib pain and other various complaints of pain.  In response, plaintiff was treated with Ibuprofen, antibiotic ointment and Percocet.

Plaintiff asserts, without evidentiary support, that he did not receive adequate medical attention.  Plaintiff's subjective complaints of rib pain, without corroborating evidence, are

insufficient to give rise to a claim for deliberate indifference. *See Lewis v. Irvin*, 1999 WL 603831, at *2 (W.D.N.Y. 1999). There is no evidence in the record that any of the defendants were deliberately indifferent to any of plaintiff's medical needs. The diagnostic films confirmed that plaintiff was not suffering from any serious ailment. While plaintiff obviously disagrees with that assessment, plaintiff has not established with competent, admissible evidence that he received improper medical attention and fails to raise an issue of fact. *See Moss v. Nesmith*, 2008 WL 413297, at* (N.D.N.Y. 2008) (the plaintiff was seen 18 times between the date of injury and his transfer and x-rays indicated no fractures to his ribs). Accordingly, defendants' motions for summary judgment and dismissal of plaintiff's claims of deliberate indifference are granted.

## CONCLUSION

Plaintiff asserted a cause of action for medical deliberate indifference against Burda, Thompson and Nasmith. Plaintiff has not alleged, and the record does not support, any other claims against Burda, Thompson or Nasmith. Accordingly, Burda, Thompson and Nasmith are awarded summary judgment.

It is hereby

**ORDERED** that the motion by defendants Porliar, Colvin, Warner, Deluke, Baxter, Copeland, Kitchner, Nasmith and Thompson (Dkt. No. 37) for summary judgment and dismissal of plaintiff's complaint in its entirety is **DENIED IN PART AND GRANTED IN PART as follows:**

(1)     Defendants' motion for summary judgment and dismissal of plaintiff's claims based upon plaintiff's failure to exhaust administrative remedies is DENIED;

(2)     Defendants' motion for summary judgment and dismissal of plaintiff's excessive force claims relating to the March 7, 2007 incident, for failure to state a cause of action is DENIED;

(3)     Defendants' motion for summary judgment and dismissal of plaintiff's excessive force claims relating to the March 14, 2007 incident, for failure to state a cause of action is GRANTED;

(4)     Defendants' motion for summary judgment and dismissal of plaintiff's Eighth Amendment claims of medical deliberate indifference is GRANTED, it is further

**ORDERED** that defendant Burda's motion (Dkt. No. 41) for summary judgment and dismissal of plaintiff's Eighth Amendment claims of medical deliberate indifference is **GRANTED** in its entirety, it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties by regular or electronic mail, and it is further;

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral of this matter to the Magistrate Judge was RESCINDED, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Dated: January 10, 2012
     Albany, New York

Mae A. D'Agostino
U.S. District Judge