**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANNY COLON,**

                                        **Plaintiff,**

        **vs.**
                                                        **(MAD)**
**D. PORLIAR; A. COLVIN; G. WARNER;**                   **09-CV-1006**
**F. DELUKE; S. BAXTER; K. COPELAND;**
**J. KITCHNER; C. BURDEN; N.P.T NASMITH;**
**DR. THOMPSON; MICHAEL MCCARTIN,**

                                **Defendants.**
_____

**APPEARANCES:**                       **OF COUNSEL:**

GETNICK, LIVINGSTON LAW FIRM            Nicholas A. Passalacqua, Esq.
258 Genesee Street
Suite 401
Utica, New York 13502
_Attorneys for Plaintiff_

ERIC T. SCHNEIDERMAN                    Christopher W. Hall, Esq.
Attorney General for the State of New York
The Capitol
Albany, New York 12224
_Attorney for Defendants_
_D. Porliar, A. Colvin, G.. Warner, F. Deluke, S. Baxter,_
_K. Copeland, J. Kitchner_

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        The trial in this prisoner civil rights action, filed _pro se_ by Danny Colon ("Plaintiff")

pursuant to 42 U.S.C. § 1983, is scheduled to commence on August 13, 2012.  On June 11, 2012,

an evidentiary hearing was held regarding the affirmative defense that plaintiff failed to exhaust

his available administrative remedies, as required by the Prison Litigation Reform Act.

**BACKGROUND**

Familiarity with the factual background is assumed based upon this Court's prior Memorandum-Decision and Order. (Dkt. No. 46). The decision resolved, *inter alia*, defendants' motion for summary judgment based upon plaintiff's failure to exhaust his administrative remedies. Specifically, the Court held:

> Viewing the evidence in a light most favorable to the *pro se* plaintiff, the Court finds that triable issues of fact exist with respect to whether plaintiff exhausted his remedies. At trial, a jury could reasonably find that plaintiff exhausted his remedies with the Code 49 complaints and further, a jury could conclude that, "the filing of a grievance would have been redundant, and likely would ultimately have led to the same result, with deference undoubtedly being given to the investigation previously conducted". *See Franklin v. Oneida Corr. Facility*, 2008 WL 2690243, at *7 (N.D.N.Y. 2008). If plaintiff's Code 49 complaint prompted an investigation of the alleged incidents, then a question of fact may exist regarding plaintiff's claim that he had been threatened by defendants. *See Jacoby v. Phelix*, 2010 WL 1839299, at *8-9 (N.D.N.Y. 2010).

*Colon v. Porliar*, Dkt. No. 46 (January 10, 2012).

On March 27, 2012, *pro bono* trial counsel was appointed. (Dkt. No. 49). On April 11, 2012, this Court issued an Order granting defendants' application for an evidentiary hearing on the issue of plaintiff's failure to exhaust his administrative remedies. At the hearing, documentary evidence was admitted and testimony was taken of Scott Woodward, Brandi White, Karen Bellamy, Kevin Reichelt and plaintiff. The witnesses testified as follows.

Scott Woodward is employed by the New York State Department of Corrections and Community Supervision ("DOCCS") as an the Inmate Grievance Program ("IGP") Supervisor at Upstate Correctional Facility ("UCF"). From February 2010 through February 2012, Mr. Woodward was employed in the same capacity at Great Meadows Correctional Facility ("GMCF"). Mr. Woodward identified and testified that he was familiar with DOCCS Directive

#4040 entitled "Inmate Grievance Program" (Def. Ex. 1).  Specifically, Mr. Woodward testified

regarding inmate grievances related to staff conduct or "Code 49" complaints.  For these

complaints, DOCCS provides "expedited procedures" which are detailed in § 701.8 of Directive

4040 and provide, in pertinent part:

> Section 701.8. Harassment
>
> Allegations of employee harassment are of particular concern to the administrators of department facilities. Therefore, the following expedited procedure for the review of grievances alleging harassment shall be followed.
>
> (a) An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.5(a) of this Part.
> Note: An inmate who feels that he/she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.
>
> (b) A grievance alleging harassment shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (form #2136). All documents submitted with the allegation must be forwarded to the superintendent by close of business that day.
>
> ( c) The superintendent or his/her designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in section 701.2 of this Part. If not, then it shall be returned to the IGRC for normal processing.
>
> (d) If it is determined that the grievance is a bona fide harassment issue, the superintendent shall:
>
> (1) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance;
>
> (2) request an investigation by the inspector general's office; or
>
> (3) if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation.

(e) Once a grievance has been referred to the superintendent and determined to be an allegation of harassment, that grievance cannot be withdrawn. The superintendent must address the grievant's allegations.

(f) Within 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(g) If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC. This is done by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk.

(h) If the grievant wishes to appeal the superintendent's response to CORC, he/she must file a notice of decision to appeal (form #2133) with the inmate grievance clerk within seven calendar days of receipt of that response.

(i) Unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in section 701.5 of this Part shall be followed.

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8 (2010).

The procedures compel the inmate to send the "Code 49" grievance to the Grievance Office through the facility. Mr. Woodward testified that he would read the grievance and then forward the grievance to a clerk. The clerk assigns the matter a grievance code or number and enters it into the database. The Code 49 grievance or complaint would then be forwarded to the Superintendent who directs the course of the investigation. If the Superintendent deemed the allegations "bona fide", he referred the matter to the Inspector General's Office for an investigation. The Superintendent could also order an internal investigation of the complaint. With grievances of this nature, a hearing is not held.

Mr. Woodward testified that a formal grievance was not necessary to initiate this process. Rather, a letter forwarded to the Grievance Office would be treated as a Code 49 complaint. At

defense counsel's request, Mr. Woodward searched the DOCCS databases to determine whether plaintiff filed any grievance(s) in 2007.   Mr. Woodward performed the searches using the following information: (1) plaintiff's "DIN" (department identification number); (2) plaintiff's last name; and (3) "Code 49" complaints, generally.  Mr. Woodward found no grievances.

Mr. Woodward identified a letter, drafted by plaintiff, entitled "Code 49 Complaint" and dated April 25, 2007 but noted as "resubmitted: 6-21-07".  (Def. Ex. 2).  The letter was addressed to Commissioner Brian Fischer with copies forwarded to the Superintendents of GMCF and UCF. The letter was stamped "received" by the Inspector General on June 25, 2007.  Mr. Woodward testified that the letter was not a grievance or Code 49 grievance because it did not have a grievance number.  Mr. Woodward also stated that he never received the letter because he was not employed at the Grievance Office at GMCF or UCF in 2007.

Brandi White is also employed as an Inmate Grievance Program Supervisor at UCF and shares an office with Mr. Woodward.  She previously worked as the IGP Supervisor at GMCF from May 2007 until November 2009.  Ms. White searched the UCF database for grievances filed by plaintiff in 2007 and found no such grievances.  Ms. White confirmed Mr. Woodward's testimony with regard to plaintiff's June 2007 letter to Commissioner Fischer and testified that it was not a grievance because it was not coded with a grievance number.  Ms. White testified that Code 49 complaints cannot be resolved informally and must be assigned a grievance number. She further stated that an inmate will receive a response to a Code 49 complaint within 20 to 25 days regardless of what type of investigation is ordered.  The notification will contain the grievance number.

Karen Bellamy is the DOCCS Director of IGP for DOCCS.  Ms. Bellamy's duties include investigating appeals filed with the Central Office Review Committee (CORC), drafting proposed

responses and ensuring that the CORC panel has all pertinent information to resolve appeals. Ms. Bellamy's office is responsible for sending CORC's decisions to inmates. Ms. Bellamy searched CORC's database to determine whether plaintiff filed any appeals in 2007. Ms. Bellamy found no appeals filed by plaintiff. Ms. Bellamy testified that plaintiff previously appealed grievances to CORC in 1997 and most recently in 2009.

Kevin Reichelt is currently employed by DOCCS as a Correction Officer at Hudson Correctional Facility in Hudson, New York. In 2007, Mr. Reichelt was employed by DOCCS as an investigator for Inspector General's office. Mr. Reichelt testified that the Inspector General's office received plaintiff's June 25, 2007 correspondence entitled "Code 49" complaint. Mr. Reichelt was assigned to investigate plaintiff's use of force allegations. Mr. Reichelt testified that generally, upon receipt of assignments, he reviewed the complaint, set up his case file, ascertained where the inmate was housed and made arrangements to travel to facility to obtain a statement from the inmate. In this instance, Mr. Reichelt interviewed plaintiff (while he was housed at UCF) and three staff members allegedly involved in the incident(s). Mr. Reichelt also reviewed plaintiff's medical records and transcripts from his hearings. Mr. Reichelt testified that administrators at Great Meadows were aware of the Inspector General's investigation. Mr. Reichelt's investigation took six months. Mr. Reichelt could not recall whether he had any conversations with the Grievance Office at Great Meadows regarding the incident. Mr. Reichelt is not sure whether plaintiff filed a grievance at UCF but testified that normally, he would make a notation regarding grievances and it would be in his case file. On December 27, 2007, Mr. Reichelt issued a closing report. Due to clerical errors, the matter was resubmitted for final closing on January 1, 2008. Mr. Reichelt concluded that plaintiff's allegations were unsubstantiated.

Plaintiff is currently incarcerated at Sing Sing Correctional Facility.  Plaintiff testified that while he was housed at GMCF, he filed a grievance relating to the March 7, 2007 use of force incident.  Plaintiff claims he filed the grievance by placing it in the Inmate Grievance Review Committee (IGRC) box on March 7, 2007.  Plaintiff testified that on March 9, 2007, he was interviewed by a sergeant (whom he did not identify by name).  Plaintiff did not retain a copy of the grievance and claims he never received a response.  Plaintiff testified that he also filed a grievance after the April 26, 2007 incident.  Plaintiff filed this grievance by giving the grievance to the corrections officer on his floor of the infirmary.  Plaintiff alleges that he "gave numerous letters" to the officer on the hospital floor and that they were not mailed and contends that he never received a response to either grievance.  Plaintiff did not retain a copy of the grievance relating to the April 26, 2007 incident.  Plaintiff claims he spoke with various sergeants, lieutenants and corrections officers regarding the incidents while he was still incarcerated at GMCF prior to his transfer to UCF.

Plaintiff identified his "Code 49" complaint submitted to Commissioner Fischer.  In the letter, plaintiff stated:

> Plaintiff wrote a complaint that was investigated by B-block Sgt. - A.M. 7 to 3 tour.[1]  But plaintiff never received an answer to his complaint.
>
> Also numerous Code 49 complaints was [sic] submitted to GMCF administration about all incidents and injuries but plaintiff never received a response [ ] from March 7, 2007, April 26, 2007 and June 6, 2007 complaints.
>
> Since he has been in Upstate CF - he has resubmitted a Code 49 complaint to the facility IGRC - 6/11/07 about all said pending issues at hand and plaintiff [has] not received a response at all.  Also plaintiff submitted Code 49 complaints to T. Smith and Dr. Weissman Upstate

---

[1] Plaintiff identified himself as "plaintiff" in the letter to Commissioner Fischer.

> CF about injuries and need of medical care - 6/19/07, but no one has
> responded from GMCF or Upstate CF [ ].  Plaintiff resubmitted recent
> Code 49 complaint [ ] about issues [ ] which [sic] no response.  So
> now plaintiff move[s] for an outside facility investigation to take place
> to exhaust all state remedies before federal charges are charged against
> all parties mentioned in this complaint.

Plaintiff confirmed that he was interviewed by Mr. Reichelt but testified that he never received any correspondence from the Inspector General's office.  Plaintiff claims that since the Inspector General investigated the matter, he exhausted his administrative remedies.

## DISCUSSION

Non-exhaustion must be plead as an affirmative defense and defendants bear the burden on the issue.  The exhaustion issue is one which should be determined by the Court rather than a jury.  *Murray v. Palmer*, 2010 WL 1265591, at *4 (N.D.N.Y. 2010).  In *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011), the Second Circuit held, "the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA".  "If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.  *Dillon v. Rogers*, 596 F.3d 260, 273 (5th Cir. 2010).  "Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits."  *Id*.

## I.    Exhaustion Requirement

### A.    Relevant Legal Standard

The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).  This "requirement

'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,'" and regardless of the subject matter of the claim. *See id.* (citation omitted). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See id.* The failure to exhaust is an affirmative defense that defendants must raise and thus, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Giano*, 380 F.3d at 675 (citation omitted); *see also Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (citation omitted).

"The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Review Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

The Second Circuit has, "fashioned a three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA". *Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citation omitted). The Court must ask whether: (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) special circumstances justify the prisoner's failure to comply with administrative procedural requirements. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004). Where an inmate has not exhausted administrative remedies according to the letter of the prescribed prison procedures, the Court must determine whether circumstances existed to excuse the inmate's failure to exhaust his administrative

remedies. *Brownell*, 446 F.3d at 311. "Justification for a failure to exhaust otherwise available administrative remedies is determined by 'looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way'". *Hairston v. LaMarche*, 2006 WL 2309592, at *6 (S.D.N.Y. 2006) (citing *Giano*, 380 F.3d at 675).

As discussed and cited in this Court's prior MDO, the IGP also has an "expedited" process for harassment grievances which pertain to "[e]mployee conduct meant to annoy, intimidate, or harm an inmate". *Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (internal citations and citation omitted). A harassment grievance is sent directly to the superintendent. *Id*. If the grievance is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC. *Id*. In *Teal v. Cross*, a case in this district, United States Magistrate Judge David E. Peebles reasoned:

> Significantly, this expedited process is not exclusive, and does not preclude the filing of an ordinary grievance in the event of perceived staff harassment or retaliation. *See* 7 N.Y.C.R.R. § 701.8(a). This alternate procedure requires that an inmate claiming harassment by a DOCCS employee file a grievance, which is then assigned a grievance number and, in the event of allegations of staff harassment, forwarded to the superintendent of the facility. 7 N.Y.C.R.R. § 701.8(b). If, after reviewing the grievance, the superintendent finds it not to be facially meritorious, the matter reverts back to the IGRC for review. 7 N.Y.C.R.R. § 701.8 ( c). If, on the other hand, the superintendent believes that further inquiry is warranted, he or she may initiate an in-house investigation, or instead request investigation by the inspector general's office. 7 N.Y.C.R.R. § 701 .8(d). Once the grievance is determined, a matter which must occur within twenty-five business days of filing, *see* 7 N.Y.C.R.R. § 701.8(f), the inmate may appeal to the CORC, a step which is required in order to satisfy the exhaustion requirement.

*Teal v. Cross*, 2012 WL 917839, at *5 (N.D.N.Y. 2012).

Before utilizing this alternative procedure, an inmate generally should first report any incident to an employee's supervisor. *Id*. (citing 7 N.Y.C.R.R. § 701.8(a)). Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Pagan v. Brown,* 2009 WL 2581572, at *5 (N.D.N.Y. 2009) (citing §§ 701.8c); 701.8(d)(1)-(d)(3)). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id*. (citing § 701.8(h)). When a prisoner grieves under the expedited grievance procedure and the superintendent forwards the investigation to the Inspector General's Office, the prisoner has obtained at least partial favorable relief, and there is no basis for appeal; thus he has exhausted his administrative remedies. *Andrews v. Cruz*, 2010 WL 1142010, at *4 (S.D.N.Y. 2010).

### B.    Analysis

Defendants argue that plaintiff did not properly file a grievance to commence the grievance process. Defendants also contend that plaintiff failed to exhaust his administrative remedies because he did not appeal the Superintendent's decision regarding the Code 49 complaint to CORC.

The evidence and testimony elicited at the hearing reveal that plaintiff did not file any grievances with respect to the March 7, 2007 incident or the April 26, 2007 incident. Mr. Woodward, Ms. White and Ms. Bellamy all testified that a search of the relevant databases revealed no grievances filed by plaintiff in 2007. Plaintiff alleges that he placed a grievance in the IGRC box on March 9, 2007, but insists that the grievance was destroyed. Plaintiff also contends that he handed a grievance to the corrections officer in the hall outside his hospital room

after the April 2007 incident but claims that the corrections officer did not forward the grievance pursuant to the facility procedures. Plaintiff did not retain copies of any of the grievances he allegedly filed. Plaintiff claims that he was interviewed by "sergeants, lieutenants and corrections officers" regarding the incidents but has not identified any individuals. Plaintiff has not come forward with any evidence supporting his conclusory claims or establishing that administrative procedures were not available to him. The Court cannot, however, end it's inquiry there.

On June 21, 2007, plaintiff sent a letter entitled "Code 49 complaint" directly to Commissioner Brian Fischer on June 21, 2007. The letter was received in the Commissioner's office and, at some point, the letter was forwarded to the Inspector General's Office and received in that office on June 25, 2007. "A letter to the Superintendent who then commences an Inspector General investigation can constitute 'special circumstances' that satisfy the PLRA requirement that prison officials be afforded time and opportunity to address prisoner complaints internally." *Hairston*, 2006 WL 2309592, at *9 (citing *Wards v. Tarascio*, 119 F. App'x 327, 330 (2d Cir. 2005)). As a result of plaintiff's June 2007 letter, Commissioner Fischer or one of his designees took affirmative action to address the allegations in the complaint. Thus, the Court finds that the June 2007 letter caused the same result as an expedited grievance.

This case is strikingly similar to the Northern District case of *Pagan v. Brown*. In that case, the plaintiff did not file a formal grievance, but somehow, the Superintendent's office became aware that the plaintiff claimed he was harassed by corrections officers. The Court noted,

> It is unclear how plaintiff's allegations came to Defendant Brown's attention since plaintiff states that he did not file a "formal" grievance. Defendant Brown, however, apparently made a determination that the allegations should be investigated by the Inspector General's Office. Under the regulations for the expedited process for complaints of inmate harassment by corrections officers or prison employees, the investigation of a complaint may be initiated when the Superintendent

> determines that if true, the allegations would state a "bona fide" case
> of harassment.

*Pagan*, 2009 WL 2581572 at *7  (N.D.N.Y. 2009) (citing 7 NYCRR §§ 701.8( c); 701.8(d)

(1)-(d)(3)).

In *Pagan*, Senior United States District Court Judge Lawrence H. Kahn held:

> In this case, although plaintiff was incorrect in believing that claims
> as "serious" as his could not be grieved through the Inmate Grievance
> Procedure, his letter was ultimately forwarded to the Superintendent
> as if he had filed a "harassment" grievance. The Superintendent
> then forwarded plaintiff's complaint to the Inspector General, whose office
> conducted a full investigation as if plaintiff had filed a formal
> harassment grievance.

*Id.*

Defendants argue that the final step in any grievance procedure is an appeal to CORC.  In this regard, defendants presented evidence establishing that plaintiff did not file any appeal in 2007 with CORC.   Courts in this district have concluded, "DOCS procedures as to an administrative appeal are unclear . . . where, as here, the superintendent has directed that the complaint be investigated by the Inspector General's Office.  At that stage, the inmate has obtained at least partial favorable relief . . . [and] there is no basis for administrative appeal." *Andrews*, 2010 WL 1142010, at *5 (citing *Lawyer v. Gatto*, 2007 WL 549440, at *8 (S.D.N.Y. 2007)); *see also Hairston,* 2006 WL 2309592, at *9 (the inmate obtained "at least partial favorable relief" when the Superintendent directed the Inspector General to investigate).

In *Pagan*, the defendant relied upon § 701.8(h) arguing that the plaintiff must appeal a negative determination to CORC.  Judge Kahn concluded that, "[t]his section does not indicate that plaintiff had a mechanism to appeal the Inspector General's ultimate determination that the claims were unsubstantiated. In this case, the Superintendent's decision was not 'adverse' to the inmate since the Superintendent sent the allegations to the Inspector General's office for an

investigation." *Pagan*, at *7. Thus, the Court found that "special circumstances" existed and refused to dismiss the action for failure to exhaust administrative remedies. *Id*.

In this matter, the record establishes, and plaintiff does not dispute, that he did not file an appeal with CORC. However, for the following reasons, the Court finds that "special circumstances" existed to justify plaintiff's failure to exhaust his remedies. After receiving plaintiff's Code 49 complaint from the Commissioner's office, Mr. Reichelt "opened a file" in June 2007. The only documentary evidence regarding the investigation is a "Report of Complaint Progress" (Def. Ex. 7). The Report lacks any substantive analysis or details regarding the investigation and consists of two columns entitled "Date" and "Action Taken". The first date entered on the Report is 6/27/07 and the action is "received and reviewed case". Additional entries indicate that Mr. Reichelt requested and received documentary evidence from UCF and GMCF including photographs and interviewed various witnesses including some of the named defendants. Mr. Reichelt testified that after a six month investigation, he deemed plaintiff's allegations "unsubstantiated" and "closed the case".

In July 2007, Mr. Reichelt interviewed plaintiff as part of his "full and thorough investigation". There is no evidence that plaintiff was ever contacted or notified after the interview with regard to the progress or results of the investigation. Mr. Reichelt did not testify that he, or anyone from his office, forwarded the Report of Complaint Progress or any other documentation regarding the investigation to plaintiff. Indeed, no documentary evidence was produced or testimony elicited establishing that Mr. Reichelt prepared a final substantive report and, more importantly, whether that report was forwarded to and received by plaintiff. The record lacks any evidence regarding how or if plaintiff was advised that the case was "closed" or if he was informed that the investigation was concluded.

14

Based upon the record, there was no reason for plaintiff to appeal what he reasonably perceived to be "positive action" taken by the Superintendent.  *See Andrews*, 2010 WL 1142010, at *5 (the plaintiff understood that the case was referred to the Inspector General's office when the investigator arrived to interview him about the alleged assault).  While the regulations require the Superintendent to render a decision within 25 days of receipt of the grievance and further, indicate that the grievant "may" file his/her appeal with CORC if the Superintendent fails to respond within that time period, this is not consistent with the time it took for the Inspector General's office to investigate this matter.  Mr. Reichelt testified that the investigation took almost six months.  *See Hairston*, 2006 WL 2309592, at *9 (the Inspector General's investigation took almost four months).   Moreover, the Court is constrained to find that any event "triggered" plaintiff's obligation to appeal as there is no evidence that plaintiff received a report or any correspondence/communication from the Inspector General's office, Superintendent's office or any grievance office regarding the status or resolution of his complaint.  *See id.* at *10 (the plaintiff did not receive the Inspector General's report until discovery in the federal litigation and thus, was under no prior obligation to appeal that decision).

Accordingly, the Court finds that plaintiff received a partially favorable decision when the Commissioner referred the matter to the Inspector General's office for an investigation.  Plaintiff was never advised of the status of the investigation and was not notified that the investigation was completed or closed.  Thus, plaintiff had no obligation to appeal to CORC.

## CONCLUSION

Based upon the weight of the credible evidence, the Court finds that while plaintiff did not exactly and completely comply with DOCCS' grievance procedures, plaintiff did not attempt to "circumvent the exhaustion requirement".  *See Hairston*, 2006 WL 2309592, at *11.   For the

reasons stated above, the Court finds that "special circumstances" existed and justified plaintiff's failure to exhaust his administrative remedies.

This matter will proceed to trial. The trial will involve the merits of plaintiff's complaint only as the issue of exhaustion has been resolved by the Court. The Court directs the parties to comply with the Jury Trial Notice as issued on April 11, 2012. (Dkt. No. 50).

**IT IS SO ORDERED.**

Dated: June 19, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge